NOT FOR PUBLICATION (Doc. No. 33)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| CHRISTOPHER MCGUIGAN, | |
| Plaintiff, | Civil No. 14-7716 (RBK/JS) |
| v. | **OPINION** |
| APPLIANCE REPLACEMENT, INC., et al., | |
| Defendant(s). | |

**KUGLER**, United States District Judge:

This matter comes before the Court on Defendant Appliance Replacement d/b/a Multi-Housing Depot's ("Defendant") Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 (Doc. No. 33). The subject of this motion is Plaintiff Christopher McGuigan's ("Plaintiff") Complaint, in which he alleges Defendant unlawfully retaliated against him for exercising rights under the Family Medical Leave Act ("FMLA") and the New Jersey Law Against Discrimination ("LAD"). For the reasons stated herein, Defendant's Motion for Summary Judgment will be **GRANTED IN PART** and **DENIED IN PART**.

I.  BACKGROUND

   A.  Facts

Defendant Appliance Replacement, Inc. is a company that engages in the trucking, cabinet shop, and windows and doors businesses. Pl.'s Counterstatement of Undisputed Material

Facts ("Pl.'s SMF") ¶ 1.[1] Plaintiff began working for Defendant in 2012 in the position of Windows Technical Sales. *Id.* ¶ 9. Plaintiff's job duties consisted of going to jobs, bringing back scopes, counting and measuring, meeting with customers, following up with customers to close jobs, bringing sales, attending trade shows, and working with installation crews. *Id.* ¶ 10. Plaintiff's supervisor was Sandy Cornell ("Cornell"), manager of the Windows and Doors department. *Id.* ¶ 5. Edward Bell ("Bell") is an owner of the company. *Id.* ¶ 7.

The parties do not dispute that Plaintiff received two disciplinary actions prior to his leave. On February 12, 2014, Plaintiff received a written warning from Cornell for incorrectly measuring windows on the Windsor Arms property. Def.'s Statement of Undisputed Material Facts ("Def.'s SMF") ¶ 27–28. On March 7, 2014, Plaintiff received another reprimand for using the company credit card to make a personal purchase of alcohol. *Id.* ¶ 29; Pl.'s SMF ¶ 19–20. At some point before Plaintiff went on leave, Cornell also discovered that Plaintiff had sent an inaccurate quote for a project at Sussex House. Def.'s SMF ¶ 25. Plaintiff was not placed on a performance improvement plan or suspension following these incidents. Pl.'s SMF ¶ 15. Bell stated that he did not believe Plaintiff's unauthorized use of the company credit card supported termination. *Id.* ¶ 21.

Plaintiff claims that on June 2, 2014 his back snapped while at work. Def.'s SMF ¶ 4; McGuigan Dep. at 38; Reganato Dep. at 68–69; Matthew Bell Dep. at 17–18. Plaintiff informed Human Resources, Arlene Reganato, of the injury, and Reganato instructed him to speak with the company's workers' compensation doctor. Pl.'s SMF ¶ 29. A referring physician placed him on FMLA leave. *Id.* ¶ 32.

---

[1] To the extent the parties agree on particular facts, the Court will cite Defendant's Statement of Undisputed Material Facts and Plaintiff's Counterstatement of Undisputed Material Facts in support. For disputed facts, the Court will rely on the record.

The parties dispute whether Plaintiff was replaced upon going on leave.[2] Plaintiff claims that Defendant hired Eric Skare to replace him. According to Reganato, Cornell and Bell stated that Skare would be taking over Plaintiff's position and job responsibilities, with the exception of sales. Reganato Dep. at 99–101. Defendant states that it hired Skare into a new position of Field Technical Support. Cornell Dep. at 22.

Within ten days after Plaintiff began medical leave, Cornell spoke with Reganato about whether Plaintiff could work from home during his leave. Pl.'s SMF ¶ 41. When Reganato responded that Plaintiff did not have a home office, Cornell expressed surprised, as Plaintiff had left work early on many occasions to work from home. Cornell Dep. at 26. Plaintiff contests that he was ever instructed to set up a home office and testified he did not leave work early to work at home. McGuigan Dep. at 116–17. At this point, Cornell mentioned terminating Plaintiff for the first time, saying to Reganato, "You know what, I don't want him back." Pl.'s SMF ¶ 38. Reganato responded that Defendant could not terminate Plaintiff while he was on FMLA leave, to which Cornell responded, "[B]ut assuming he's going to come back at one point, what do we do then?" *Id.* ¶ 42.

The same day or one day after, Cornell spoke to Bell, an owner of the company, regarding Plaintiff's performance issues. *Id.* ¶ 43–44. Cornell told Bell that he believed Plaintiff was lying to him and could not be trusted. *Id.* ¶ 44. Cornell said, "I don't want him back. . . . I

---

[2] Plaintiff's Counterstatement of Undisputed Material Facts, in many instances, responds to Defendant's factual statements only by stating that it objects on the basis that the statement was "not material to the arguments made in Defendant's Motion for Summary Judgment." Local Civil Rule 56.1 plainly requires the opposing party to "address[] each paragraph of the movant's statement, indicating agreement or disagreement." Any statement not disputed is deemed undisputed for the purposes of the summary judgment motion. Here, this objection of Plaintiff's does not contain any indication of agreement or disagreement, and thus fails to create a dispute of material fact. Accordingly, the Court will regard such facts as undisputed for the purposes of this Motion.

think enough is enough." *Id.* Bell responded that Cornell could not fire Plaintiff while Plaintiff was on leave. *Id.* Cornell asked Bell what the company should do if and when Plaintiff returns from leave, to which Bell instructed Cornell to speak with the company's attorney. *Id.* ¶ 45–46.

Defendant claims that Plaintiff's performance issues continued to surface while he was on leave. Cornell testified that, in one instance, a client informed him that Plaintiff had misquoted a project at Woodbury Arms. Cornell Dep. at 36–37. Cornell estimated that he uncovered a total of about five misquotes. *Id.* at 35. Before Plaintiff returned, Cornell spoke again with Bell about Plaintiff, but now about eliminating his position. Pl.'s SMF ¶ 51–52. Two weeks prior to Plaintiff's return, Cornell asked Reganato, "What am I going to do with him because I'm not putting him out in the field?" *Id.* ¶ 53.

On August 4, 2014, Plaintiff returned to work for Defendant. *Id.* ¶ 54. During his first week back, he was reissued a company car and phone. Def.'s SMF ¶ 20–21. Plaintiff told Cornell that he was "ready to hit the ground running" and meet with customers. Pl.'s SMF ¶ 58. Cornell, however, asked Plaintiff to stay at his desk. Def.'s SMF ¶ 44. Plaintiff claims that Cornell forced him to review old files rather than return to his previous job duties. McGuigan Dep. at 5; Reganato Dep. at 137. Defendant claims that Cornell asked Plaintiff to call customers listed in a stack of paperwork and obtain the status of those projects. Cornell Dep. at 54. During Plaintiff's first three days back, Defendant asserts, Plaintiff did not review the paperwork or do any work. *Id.* at 57.

On August 6, 2014, Plaintiff's third day back, Defendant claims that Cornell learned the company lost a job that Plaintiff worked on before he took leave. *Id.* at 59–60. Cornell stated he had asked Plaintiff to correct certain errors on the project prior to his leave but Plaintiff had not done so. *Id.* at 64. Following this discovery, Cornell called the owner of the property, who

contradicted the explanation Plaintiff had proffered for the error. *Id.* at 64–68. It was at this point, Cornell testified, that the final decision was made to eliminate Plaintiff's position. *Id.* at 116–17. That afternoon, Cornell met with Plaintiff to discuss his job performance. Pl.'s SMF ¶ 60. When Plaintiff asked Cornell if he was going to fire him, Cornell said no. *Id.* During this same conversation, Cornell also said he was building a case to fire him, according to Plaintiff. McGuigan Dep. at 48.

Cornell later testified that the following day, August 7, 2014, was when he made the decision to terminate Plaintiff. Pl.'s SMF ¶ 67. Cornell and Bell discussed eliminating Plaintiff's position and then informed Reganato. *Id.* ¶ 61. Reganato told Bell that she believed termination was a poor decision, considering Plaintiff had just returned from FMLA leave and was never terminated for similar performance issues prior to leave. *Id.* ¶ 62. In response, Bell instructed her to speak with the company attorney, which she did. *Id.* ¶ 63–64. On August 8, 2014, Reganato drafted a record of termination which stated that Plaintiff's termination would be effective August 11, 2014 due to elimination of his position and performance. *Id.* ¶ 79–81; Reganato Dep. Ex. 6. On August 11, 2014, Reganato and Cornell called Plaintiff to inform him of his termination. Pl.'s SMF ¶ 83–84. They told him the company was downsizing and eliminating his position. *Id.*

Bell testified that he was solely responsible for the decision to eliminate Plaintiff's position and that he did so for cost reasons. Def.'s SMF ¶ 63. He stated that he did not take performance into account. *Id.* ¶ 62. Matthew Bell, another owner of the company, testified that Plaintiff's termination was not due to financial problems. Pl.'s SMF ¶ 77. Reganato testified that Bell told her the reason was both financial and because termination is what Cornell wanted. *Id.* ¶

5

65. Cornell stated that Plaintiff was terminated both because of performance and because his position was eliminated. *Id.* ¶ 68.

> B. **Procedural History**

Plaintiff filed a Complaint in the Superior Court of New Jersey, Camden County on November 5, 2014. Defendant timely filed a Notice of Removal invoking the Court's jurisdiction under 28 U.S.C. § 1331 on December 11, 2014 (Doc. No. 1). Plaintiff's Complaint alleges disability discrimination under the LAD, N.J.S.A. § 10:5–1, *et seq.*, perception of disability discrimination under the LAD, retaliation under the LAD, retaliation under the FMLA, 28 U.S.C. § 2601, *et seq.*, and wrongful discharge under common law. On January 14, 2016, Defendant filed the present Motion for Summary Judgment. Plaintiff agreed to dismissal of its LAD discrimination and common law wrongful discharge claims, and only the FMLA and LAD retaliation claims remain. Pl.'s Opp'n Br. at 3 n.1.

**II.    LEGAL STANDARD**

The Court should grant a motion for summary judgment when the moving party "shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "material" to the dispute if it could alter the outcome, and a dispute of a material fact is "genuine" if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'") (quoting *First Nat'l Bank of Az. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). In deciding whether there is any genuine issue for trial, the court is not to weigh evidence or decide issues of fact. *Anderson*, 477 U.S. at 248. Because fact and credibility

6

determinations are for the jury, the non-moving party's evidence is to be believed and ambiguities construed in its favor. *Id.* at 255; *Matsushita*, 475 U.S. at 587.

Although the movant bears the burden of demonstrating that there is no genuine issue of material fact, the non-movant likewise must present more than mere allegations or denials to successfully oppose summary judgment. *Anderson*, 477 U.S. at 256. The non-moving party must at least present probative evidence from which the jury might return a verdict in his favor. *Id.* at 257. Where the non-moving party fails to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," the movant is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III. DISCUSSION

### A. FMLA Retaliation Claim

FMLA retaliation claims that are based on circumstantial evidence are analyzed under the *McDonnell Douglas* burden-shifting framework. *Ross v. Gilhuly*, 755 F.3d 185, 193 (3d Cir. 2014).[3] Under this framework, the plaintiff must first establish a prima facie case of discrimination under the FMLA: (1) she exercised her right to FMLA-qualifying leave, (2) she suffered an adverse employment action, and (3) the adverse action was causally related to her invocation of rights. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973). If the plaintiff successfully establishes a prima facie case, the defendant must articulate a legitimate, non-discriminatory reason for the adverse employment action. *Id.* Then, the burden shifts back to

---

[3] When FMLA retaliation claims are based on "direct evidence," they are assessed under the mixed-motive framework set forth in *Price Waterhouse*. *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 961 F.3d 294, 302 (3d Cir. 2012) (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 276–77 (1989)). Plaintiff has presented no such direct evidence in this case, nor has he argued that this case should be decided under the *Price Waterhouse* mixed-motive framework.

7

the plaintiff to prove, by a preponderance of the evidence, that the articulated reason was a pretext for retaliation. *Id.*

In regards to the present Motion, Defendant does not contest that Plaintiff exercised his right to FMLA-qualifying leave and suffered an adverse employment action. *See* Def.'s Br. at 14–16. Thus, the Court turns to whether there is a causal relationship between the adverse action and invocation of rights, whether Defendant had a legitimate, non-discriminatory reason, and whether Plaintiff has established that reason is pretextual.

### 1. Causal Relationship

Establishing a causal relationship between an employee's decision to take FMLA leave and an adverse employment event requires proof of the employer's retaliatory intent. Retaliation need not be the sole reason motivating the adverse employment decision; rather, it will suffice for the plaintiff to show that the retaliatory animus was "a determinative factor," i.e., that "the action would not have been taken but for [the] protected activity." *Culler v. Shinseki*, 840 F. Supp. 2d 838, 846 (D.N.J. 2011) (citing *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 231–32 (3d Cir. 2007)). Stated another way, the court's inquiry is whether the proffered evidence "suffice[s] to raise the inference" that the plaintiff's request for FMLA leave was causally related to the adverse employment action in question. See *LeBoon*, 503 F.3d at 232.

The Third Circuit has noted that there are two main methods of raising such an inference. *Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 288 (3d Cir. 2001). First, where there exists "unusually suggestive" timing between the leave request and the adverse employment action, such circumstance may be sufficient to establish causation. *LeBoon*, 503 F.3d at 232. Second, causation may be established based on a period of "intervening antagonism." *Id.* To make this determination, courts consider "a broad array of evidence." *Id.* Importantly, it is

incumbent upon the employee to demonstrate that the antagonistic behavior began after the FMLA request was made. *Compare Randler v. Kountry Kraft Kitchens*, No. 11-474, 2012 WL 6561510, at *12 (M.D. Pa. Dec. 17, 2012) (rejecting plaintiff's causation argument in part because the alleged antagonistic behavior towards plaintiff was "not markedly different from the incidents [the plaintiff] experienced prior to her" engaging in protected activity) *with Abramson*, 260 F.3d at 289 (crediting plaintiff's evidence of ongoing antagonism in light of evidence of plaintiff's superior's "change in demeanor after [plaintiff engaged in protected activity]"). Finally, in addition to these two primary methods, inconsistencies or discrepancies in the employer's articulated reasons for terminating the employee may be sufficient to support an inference of causation. *LeBoon*, 503 F.3d at 232; *Abramson*, 260 F.3d at 290. When considering any circumstantial evidence of causation, the court is to lend "a careful eye to the specific facts and circumstances encountered." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279 n.5 (3d Cir. 2000).

      Plaintiff argues that a causal connection exist between his decision to take FMLA leave and an adverse employment event because the timing was unusually suggestive. The Third Circuit has found timing to be unusually suggestive where seven days transpired between a plaintiff invoking her right to leave and termination. *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 961 F.3d 294, 307 (3d Cir. 2012). Here, Plaintiff argues that he was replaced immediately upon going on leave. Defendant's Human Resources department, Reganato, testified that another employee, Skare, replaced Plaintiff when Plaintiff went on leave. Plaintiff's supervisor, Cornell, stated that he did not intend to reassign Plaintiff his previous job responsibilities in the field when Plaintiff returned. Plaintiff in fact was not permitted to reenter the field in the week he worked before his termination. Defendant disputes this characterization. Defendant asserts that it

did not replace Plaintiff when he went on leave because Skare only took over some of Plaintiff's responsibilities and not his sales duties.

Plaintiff asserts that, in the alternative, Defendant decided to terminate him about ten days after he went on leave. Cornell stated in his deposition that he told Reganato, "I don't want [Plaintiff] back," within ten days after Plaintiff's leave began. Shortly after, Cornell also spoke to Bell regarding Plaintiff and said, "I don't want him back. . . . I think enough is enough." Both Reganato and Bell told Cornell that he could not fire Plaintiff while Plaintiff was on leave. In response, Cornell asked what action he could take when Plaintiff's leave ended. Defendant disputes that it decided to terminate Plaintiff while he was on leave. It claims that Cornell did not have the power to fire Plaintiff and was merely suggesting termination to Bell during their conversations about Plaintiff. According to Cornell, Defendant made the final decision to eliminate Plaintiff's position during Plaintiff's first week back at work. Defendant argues that this contention is supported by Defendant reissuing to Plaintiff a company car and phone upon his return.

Construing factual disputes in a light most favorable to Plaintiff, the Court finds that a reasonable jury could conclude that Plaintiff's invoking of FMLA leave is causally connected to his termination. Plaintiff has proffered evidence such as testimony from Defendant's Human Resources department, Skare's job responsibilities, and Plaintiff's assignments upon his return that suggest Plaintiff was replaced upon going on leave. Defendant has presented testimony that contests that Skare replaced Plaintiff, asserting that Skare did not take over all of Plaintiff's responsibilities. Such evidence, however, present a dispute of material fact over the credibility of Plaintiff's versus Defendant's characterizations of Skare's role. Factual disputes that are material are for the factfinder to resolve, and not for this Court to dispose on summary judgment.

Furthermore, there is no dispute that Plaintiff's supervisor, within ten days of leave, stated, "I don't want him back." Defendant claims that Cornell had no authority to terminate Plaintiff and that Bell made the final decision to eliminate Plaintiff's position after Plaintiff returned to work. However, Plaintiff notes that Bell in several instances recognized Cornell's authority to fire Plaintiff. Cornell stated that Bell said to him, "[Y]ou can't fire Chris while he is out on FMLA," Cornell Dep. at 30, and Reganato testified that Bell explained Plaintiff's position was eliminated because that was what Cornell wanted. Defendant also argues that it did not make the final decision to fire Plaintiff until his first week back. However, Plaintiff presented evidence that Reganato and Bell repeatedly precluded Plaintiff from being fired while on leave and Cornell in response inquired what action he could take when Plaintiff returned. Such material is sufficient for a reasonable finder of fact to conclude that Defendant decided to terminate Plaintiff within ten days of him invoking leave, even if Defendant did not execute termination until after leave ended. As such, the Court finds that Plaintiff has established a causal connection between Plaintiff's FMLA leave and termination, and a prima facie case, for the purposes of this Motion.

### 2. Defendant's Legitimate, Non-Discriminatory Reason

Plaintiff does not contest that Defendant has articulated a legitimate, non-discriminatory reason for its decision to terminate Plaintiff. There is no dispute that Plaintiff had documented performance issues: he received a write-up for incorrectly measuring windows, he was reprimanded for using the company credit card to purchase alcohol, and clients reported problems with a number of his assigned jobs. Defendant also presented testimony that Plaintiff's position was eliminated. Thus, this Court finds that Defendant has made a showing of a legitimate, non-discriminatory reason for terminating Plaintiff. The burden shifts back to Plaintiff to demonstrate that Defendant's reason was pretextual.

### 3. Plaintiff's Evidence of Pretext

To establish pretext, the plaintiff must show more than that the defendant's reason for her termination was wrong or mistaken. *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994). She is required to prove that the defendant's articulated non-retaliatory reason is either: (1) a post hoc fabrication designed to camouflage intentional retaliation or (2) not the motivation behind the defendant's decisions. *Id.* at 764. To do this, the plaintiff must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [the defendant's] proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them unworthy of credence, and hence infer that [the defendant] did not act for [the asserted] non-discriminatory reasons." *Id.* at 765 (internal citations and quotations omitted) (quoting *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 533 (3d Cir. 1992)). The Third Circuit has considered factors such as: "the defendant's credibility, the timing of an employee's dismissal, and the employer's treatment of the employee." *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632, 638–39 (3d Cir. 1993).

In Plaintiff's case, Plaintiff argues that Defendant's reason for terminating him was pretextual because Cornell had been aware of Plaintiff's performance issues but did not fire him until after he elected FMLA leave. The Third Circuit has found evidence for pretext where the defendant was aware of performance problems by the plaintiff but did not take adverse action until the plaintiff invoked medical leave. *Lichtenstein*, 691 F.3d at 310–11. Here, three months elapsed between Plaintiff's two formal reprimands and when he went on leave. During that interim, Defendant did not place Plaintiff on a performance plan, suspend him, or discuss terminating him. Cornell testified that the first time he discussed terminating Plaintiff was within ten days after Plaintiff's leave. Defendant explains the timing by countering that Plaintiff's major

mistakes did not surface until after his leave began. Defendant admits, however, that it did know of a number of Plaintiff's performance problems prior to his leave. Cornell was aware of errors Plaintiff had made in the Windsor Court and Sussex House projects. Matthew Bell, another owner of the company, heard of "significant mistakes" that Plaintiff had made before Plaintiff went on leave, that dated back nine months and possibly as early as 2012. Matthew Bell Dep. at 14. Human Resources, Reganato, questioned why Plaintiff was being terminated following leave when he had had performance issues before. Such evidence is enough for a rational factfinder to conclude that Defendant knew that Plaintiff generally had performance problems prior to his leave but did not decide to terminate him until after he chose to take leave. Defendant may nonetheless show at trial that its termination decision was not pretextual. However, Plaintiff has furnished enough evidence of a pretext to survive summary judgment.

Plaintiff additionally posits that Defendant's reasons for terminating Plaintiff have been inconsistent and therefore are not worthy of credence. Defendant's position is that Plaintiff was fired both because of poor performance and because the position was eliminated. Cornell testified that Plaintiff was terminated for those "[t]wo reasons," Cornell Dep. at 25, and Matthew Bell stated similarly, Matthew Bell Dep. at 10. That testimony is directly contradicted by Edward Bell, who said that he was the person who decided to eliminate Plaintiff's role and he did so only because of cost. When asked if his decision factored in Plaintiff's job performance, Bell responded that he "did not take any of it into consideration." Bell Dep. at 16. This testimony is additionally inconsistent with Reganato's account that Edward Bell stated Plaintiff's position was eliminated in part because of Cornell's wishes. The Court finds that Plaintiff has identified instances where Defendant offered contradictory explanations for terminating Plaintiff. Confronted with such evidence, a reasonable finder of fact could rationally find Defendant's

reasons unworthy of credence. Thus, Plaintiff has established pretext, and the Court denies summary judgment for the FMLA retaliation claim.

### B. LAD Retaliation Claim

When analyzing a retaliation claim under the LAD, the court employs the same three-step burden-shifting analysis that it uses to evaluate a discrimination claim. *Marrero v. Camden County Bd. of Social Serv.*, 164 F. Supp. 2d 455, 473 (D.N.J. 2001); *see McDonnell Douglas*, 411 U.S. at 802–05. Under the first step of this framework, the plaintiff must establish a prima facie case of retaliation by showing that: "(1) plaintiff was in a protected class; (2) plaintiff engaged in protected activity known to the employer; (3) plaintiff was thereafter subjected to an adverse employment consequence; and (4) that there is a causal link between the protected activity and the adverse employment consequence." *Victor v. State*, 4 A.3d 126, 141 (N.J. 2010). Once the plaintiff establishes the prima facie elements of retaliation, then the defendant must provide legitimate, non-retaliatory reasons for the employment decision. *Romano v. Brown & Williamson Tobacco Corp.*, 665 A.2d 1139, 1142 (N.J. Super. Ct. App. Div. 1995). At that point, the plaintiff has to burden to present evidence of the employer's discriminatory motive to demonstrate that the legitimate reasons articulated by the employer were merely a pretext for discriminatory intent. *Id.*

Defendant argues that Plaintiff has failed to demonstrate the first element of a prima facie case for retaliation under the LAD, that Plaintiff was a member of a protected class. The LAD protects against discrimination on the basis of disability. N.J.S.A. 1:5–4.1. To show that a plaintiff has a disability, the New Jersey Supreme Court has required a plaintiff to present competent and legal medical evidence. *Clowes v. Terminix Int'l, Inc.*, 538 A.2d 794, 805 (N.J. 1988). Competent and legal medical evidence need not be medical expert testimony, and

testimony by the plaintiff's treating physician can suffice. *Sarnowski v. Air Brooke Limousine, Inc.*, 510 F.3d 398, 404 (3d Cir. 2007). In this case, Plaintiff has failed to proffer any medical evidence showing that Plaintiff suffered from a disability. The New Jersey Superior Court, Appellate Division has found evidence of FMLA leave alone to not be sufficient to show the plaintiff was disabled. *DiPasquale v. Hackensack Univ. Med. Ctr.*, No. A-3930-12T4, 2014 WL 7511626, at *3 (N.J. Super. Ct. App. Div. Jan. 13, 2015) (referring to trial judge's ruling). Given the lack of any medical evidence in the record, this Court must dismiss Plaintiff's retaliation claim under the LAD.

### IV.   CONCLUSION

For the reasons expressed above, Defendant's Motion for Summary Judgment will be **DENIED** as to the FMLA retaliation claim and **GRANTED** as to the LAD and wrongful discharge claims.


Dated:   9/26/2016                                                                  s/ Robert B. Kugler

                                                                                                                      ROBERT B. KUGLER

                                                                                                                      United State District Judge